ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MICHELLE RIVERA PÉREZ<br><br>Recurrida<br><br>V.<br><br>HAMILTON MONTALVO PÉREZ<br><br>Peticionario | TA2026CE00587 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D DI2018-0341<br><br>Sobre: Divorcio |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2026.

Comparece el señor Hamilton Montalvo Pérez (peticionario), quien solicita la revisión de una *Resolución* emitida el 11 de marzo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] En dicho dictamen, el foro recurrido ordenó el otorgamiento de una escritura de donación sobre un inmueble del peticionario y de la señora Michelle Rivera Pérez (recurrida), conforme se estableció en la *Sentencia* de divorcio de 6 de abril de 2018, sin incluir una cláusula de reversión.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

**I.**

El 6 de abril de 2018, el TPI emitió una *Sentencia* en la que declaró Ha Lugar la petición de divorcio por consentimiento mutuo, tras examinar bajo juramento a las partes y convencerse de que su decisión no fue producto de irreflexión ni coacción.[2] En esta, el foro primario acogió e incorporó los acuerdos consignados en la petición de divorcio. En lo medular, las partes pactaron donar un inmueble

---

[1] Apéndice 2, Entrada Núm. 1 del caso TA2026CE00587 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 12 de marzo de 2026.
[2] *Íd.*, Apéndice 1, Entrada Núm. 1.

sito en Yauco, Puerto Rico, a sus dos (2) hijas, mediante escritura pública a otorgarse dentro de los diez (10) días de advenir final y firme el dictamen.

Además, se obligaron a suscribir todo instrumento público, privado y bancario necesario para perfeccionar la titularidad y viabilizar la inscripción registral. Establecieron que los acuerdos constituían una transacción final y en finiquito sobre sus bienes gananciales, con renuncia expresa y recíproca a reclamaciones o contrarreclamaciones. También, estipularon que, al advenir final y firme la *Sentencia*, dichos acuerdos, suscritos tras un proceso deliberativo entre ambos y asesoramiento legal adecuado, tendrían eficacia de cosa juzgada y naturaleza contractual transaccional.

El 9 de febrero de 2026, la señora Rivera Pérez presentó una *Moción Reiterando y en Solicitud de Orden.*[3] Mediante esta, sostuvo que, a pesar de haber transcurrido siete (7) años desde que se emitió la *Sentencia* de divorcio que incorporó el acuerdo transaccional, el señor Montalvo Pérez no había otorgado la escritura de donación pactada. Alegó que, en mayo de 2025, solicitó la ejecución del dictamen para que este la otorgara o, en su defecto, la suscribiera un alguacil. Expuso que el peticionario postergó el otorgamiento mediante planteamientos sobre, entre otros, los notarios propuestos, el borrador de escritura y un pleito de impugnación de la *Sentencia* de divorcio por vicio del consentimiento.[4] Añadió que, pese a la orden judicial para coordinar el otorgamiento de la escritura, este incumplió

---

[3] *Íd.*, Anejo, Entrada Núm. 5.
[4] El 27 de diciembre de 2024, el TPI desestimó la *Demanda* en el caso VB2024CV00271, instado por el señor Montalvo Pérez para dejar sin efecto la estipulación sobre la donación del inmueble incorporada a la *Sentencia* de divorcio. Determinó que la acción era tardía y que no se demostró fraude, error o nulidad que justificara el relevo del cumplimiento de lo pactado. El 21 de marzo de 2025, este Tribunal confirmó dicho dictamen en el recurso KLAN202500081. Concluyó que las estipulaciones constituían una transacción judicial vinculante con efecto de cosa juzgada; que la donación no era perjudicial, ya que ambos excónyuges renunciaron por igual a su participación en beneficio de sus hijas, y que no se probó fraude que ameritara el relevo de la *Sentencia*.

y procuró incorporar disposiciones que alteraban el acuerdo. Ante ello, solicitó que un alguacil suscribiera la escritura en su lugar.

Así las cosas, el 11 de marzo de 2026, el foro primario emitió la *Resolución* recurrida, mediante la cual declaró Con Lugar la solicitud de la señora Rivera Pérez y ordenó que, dentro de treinta (30) días, se otorgara la escritura de donación de forma plena y sin condición alguna, esto es, sin incluir una cláusula de reversión.[5]

El TPI consignó que, en la vista celebrada ese día, el señor Montalvo Pérez expresó estar dispuesto a otorgar la escritura pública si incluía la reversión prevista en el Artículo 1319 del Código Civil de 2020, según enmendado, 31 LPRA sec. 10063, equivalente al Artículo 583 del Código Civil de 1930, 31 LPRA sec. 2028. El foro recurrido concluyó que tal cláusula alteraría la *Sentencia* de divorcio, ya que se pactó una donación graciosa e incondicionada, conforme al Código Civil de 1930, *supra*, vigente al momento de incorporar el acuerdo.

Insatisfecho, el 27 de marzo de 2026, el peticionario solicitó reconsideración.[6] Arguyó que el TPI erró al calificar la donación como pura, gratuita e incondicionada, ya que la estipulación formaba parte de un esquema de distribución patrimonial con causa onerosa. Adujo que, al no otorgarse la escritura dentro de los diez (10) días, no procedía ejecutarla bajo los términos originales ni excluir la aplicación del Código Civil de 2020, *supra*. A su vez, alegó que ejecutar la donación en esos términos alteraba su consentimiento y viciaba la causa del negocio jurídico. Mediante *Resolución* emitida el 7 de abril de 2026, el foro primario denegó la reconsideración.[7]

Aún inconforme, el 11 de mayo de 2026, el señor Montalvo Pérez presentó este recurso de *certiorari*, en el que señaló que el TPI cometió los siguientes errores:

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL

---

[5] *Íd.*, Apéndice 2, Entrada Núm. 1. Notificada el 12 de marzo de 2026.
[6] *Íd.*, Apéndice 8, Entrada Núm. 1.
[7] *Íd.*, Apéndice 9, Entrada Núm. 1. Notificada el 8 de abril de 2026.

ESTABLECER QUE LA DONACIÓN PACTADA EN LA ESTIPULACIÓN DE DIVORCIO FUE UNA PURA, GRATUITA, SIMPLE Y SIN CONDICIÓN ALGUNA Y QUE NO SE PUEDEN INCLUIR LAS CLÁUSULAS CONTENIDAS EN EL CÓDIGO CIVIL CON RELACIÓN A LA FIGURA DE LA DONACIÓN POR NO APERCIBIR ESTO EN LA ESTIPULACIÓN DE DIVORCIO.

B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL DISCUTIR Y ANALIZAR LA OTORGACIÓN DE LA DONACIÓN BAJO EL CÓDIGO CIVIL DE 1930, CUANDO ÉSTA NO SE HA EFECTUADO, LO QUE SUPONE QUE TIENE QUE CUMPLIR CON LAS DISPOSICIONES DEL CÓDIGO CIVIL VIGENTE.

C. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN Y AL HACERLO, INCIDE EN [EL] DEBIDO PROCESO DE LEY AL CONTINUAR CON LOS PROCESOS CUANDO SE CONSIGNÓ QUE NO HABÍAMOS SIDO NOTIFICADOS DE LA MOCIÓN QUE DIO PIE A QUE SE FIJARA LA VISTA, NO CONSIGNARLO EN SU RESOLUCIÓN NI EN MINUTA COMO SE SOLICITÓ, Y EXPONER UNA POSICIÓN EN LA VISTA A FAVOR DEL ARGUMENTO DEL COMPARECIENTE QUE TUVO POR EFECTO DETENER LA ARGUMENTACIÓN A FAVOR Y LUEGO DECIDIR ALGO COMPLETAMENTE CONTRARIO A LO EXPRESADO EN CORTE ABIERTA.

En esencia, el peticionario cuestionó que el TPI calificara la donación como pura, gratuita e incondicionada, cuando la estipulación formaba parte de una transacción judicial de divorcio y liquidación patrimonial. Adujo que la causa no fue la mera liberalidad, sino las prestaciones recíprocas de una estipulación onerosa de divorcio. Reiteró que la condición sobre el término para otorgar la escritura pública expiró sin que las partes actuaran. Por ello, sostuvo que su ejecución debía regirse por el Código Civil de 2020, *supra*, y podría incluir una cláusula de reversión. Añadió que la omisión de dicha disposición en el acuerdo no implicaba su renuncia ni permitía ignorar el término convenido, ya que ello incidía sobre el consentimiento, el objeto y la causa. Por último, adujo que se violó su debido proceso de ley por falta de notificación adecuada de la moción que originó la vista y de oportunidad para argumentar su postura, pese a que el TPI adjudicó derechos patrimoniales en su contra.

Por su parte, el 29 de mayo de 2026, la recurrida presentó su alegato y puntualizó que la *Sentencia* de divorcio incorporó una

transacción judicial final, mediante la cual las partes pactaron donar graciosamente el inmueble a sus hijas. Señaló que el señor Montalvo Pérez incumplió tal obligación e impugnó infructuosamente el dictamen en otro pleito, por lo que procedía la ejecución de sentencia. Esgrimió que la controversia surgió cuando este condicionó el otorgamiento de la escritura a una cláusula de reversión que alteraría la donación plena, graciosa e incondicionada que pactaron.

## II.

### A. *Certiorari*

Una determinación post-sentencia es revisable únicamente mediante el recurso de *certiorari*, cuya expedición descansa en la sana discreción de este Tribunal. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012), a tenor con la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025). A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### B. Estipulaciones en el divorcio por consentimiento mutuo

Una acción de divorcio por consentimiento mutuo debe tramitarse mediante una petición conjunta acompañada de estipulaciones sobre la división de bienes, el sustento de las partes y las demás consecuencias del divorcio. *Díaz Rodríguez v. García Neris,*

208 DPR 706 (2022); *Náter v. Ramos*, 162 DPR 616 (2004); *Igaravidez v. Ricci*, 147 DPR 1 (1998); *Figueroa Ferrer v. ELA*, 107 DPR 250 (1978). La exigencia de estipular la división de bienes procura evitar que, decretado el divorcio, los excónyuges enfrenten controversias sobre la liquidación del régimen económico matrimonial y los aspectos patrimoniales pactados. *Díaz Rodríguez v. García Neris*, *supra*; *Figueroa Ferrer v. ELA*, *supra*. Además, busca asegurar que la decisión de divorciarse no sea producto de irreflexión o coacción. *Íd.; Náter v. Ramos*, *supra*; *Magee v. Alberro*, 126 DPR 228 (1990).

Las estipulaciones en una petición de divorcio por consentimiento mutuo no quedan al arbitrio exclusivo de las partes, ya que corresponde al tribunal verificar que respondan a una decisión libre, informada y deliberada y que protejan adecuadamente a las partes. *Íd.; McConnell v. Palau*, 161 DPR 734 (2004). No obstante, el tribunal debe respetar la libertad de contratación de las partes en cuanto a las estipulaciones puramente económicas, como la distribución de bienes, salvo que resulten gravemente perjudiciales para una de ellas. *Náter v. Ramos*, *supra*.

Una vez el tribunal acepta las estipulaciones alcanzadas por las partes, estas constituyen una transacción judicial. *Íd.; Betancourt González v. Pastrana Santiago*, 200 DPR 169 (2018); *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006); *Negrón Rivera y Bonilla, Ex parte*, 120 DPR 61 (1987); *Igaravidez v. Ricci*, *supra*. En este contrato, las partes realizan concesiones recíprocas para evitar o poner fin a un pleito e incorporan los acuerdos al proceso judicial. *Íd.*

Por su naturaleza, el contrato de transacción se interpreta restrictivamente, debido a que suele implicar obligaciones recíprocas, razones complejas y mutuos sacrificios. *Rivera Rodríguez v. Rivera Reyes*, *supra*; *Magee v. Alberro*, *supra*. Por ello, su alcance se limita a los objetos expresamente pactados o que deben reputarse comprendidos por inducción necesaria de sus términos. *Íd.; véase*

Art. 1714 del Código Civil de 1930, *supra,* sec. 4826. De igual modo, una renuncia general de derechos se limita a los relacionados con la controversia transigida. *Íd.* Sin embargo, el tribunal puede precisar el alcance de la transacción mediante las reglas generales de interpretación contractual que no sean incompatibles con las normas de dicho contrato. *Díaz Rodríguez v. García Neris, supra; Negrón Rivera y Bonilla, Ex parte, supra.* Si los términos de la transacción son claros y no dejan dudas sobre la intención de las partes, se dará el sentido literal que se desprenda de sus cláusulas. Además, el contrato debe interpretarse conforme a la buena fe y bajo la presunción de lealtad y corrección en su elaboración, no de confusiones deliberadas u oscuridades. *Negrón Rivera y Bonilla, Ex parte, supra, citando a* L. Díez Picazo, *Fundamentos del Derecho Civil Patrimonial,* Madrid, Tecnos, 1979, Vol. I, págs. 251-252.

La transacción vincula a las partes a lo pactado y produce efecto de cosa juzgada sobre los puntos transigidos. *Rivera Rodríguez v. Rivera Reyes, supra; Igaravidez v. Ricci, supra.* Por consiguiente, una sentencia de divorcio final y firme tiene efecto de cosa juzgada sobre los bienes gananciales considerados en el proceso de disolución matrimonial e impide relitigar reclamaciones que pudieron plantearse y adjudicarse en ese pleito. *Íd.* Cuando se incumple una estipulación sobre liquidación de bienes alcanzada en un divorcio por consentimiento mutuo, lo convenido se hace valer mediante ejecución de sentencia en la misma acción de divorcio. *Íd.*

### C. Obligaciones sujetas a condición o a plazo

Una obligación puede quedar sujeta a condición o a plazo. *In re Chaves Torres,* 2025 TSPR 32, 215 DPR ___ (2025). Conforme al Artículo 1078 del Código Civil de 1930, *supra,* sec. 3061, la obligación sujeta a un día cierto, es decir, a plazo, solo es exigible cuando este llegue, aunque se desconozca cuándo ocurrirá. Si existe incertidumbre sobre si el día llegará, la obligación es condicional. *Íd.*

La obligación sometida a plazo nace desde la celebración del acto constitutivo, pero el plazo determina el comienzo o la terminación de sus efectos. *In re Chaves Torres, supra*; *Adm. de Terrenos v. Nerashford Dev. Corp.*, 136 DPR 801 (1994). El plazo es suspensivo o inicial cuando la obligación se torna exigible al llegar el día cierto, y resolutorio o final cuando subsiste hasta el término establecido. *In re Chaves Torres, supra.*

### D. Donación

El Artículo 558 del Código Civil de 1930, *supra,* sec. 1981, definía la donación como un acto de liberalidad mediante el cual una persona dispone gratuitamente de una cosa en favor de otra que la acepta. Por su parte, el Artículo 1305 del Código Civil de 2020, *supra,* sec. 10041, define la donación como el contrato por el cual el donante se obliga a entregar y transmitir gratuitamente la titularidad de un bien al donatario.

El Artículo 560 del Código Civil de 1930, *supra,* sec. 1983, establecía que las donaciones entre vivos podían ser puramente graciosas, onerosas o remuneratorias. La primera se realiza por mera liberalidad, sin exigir prestación alguna ni gravámenes, condiciones o limitaciones; la segunda impone al donatario un gravamen que disminuye el beneficio recibido, por lo que solo constituye donación el exceso del valor del bien sobre la carga, y la tercera responde a méritos o servicios que no constituyan deudas exigibles. *Íd.*; J. R. Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos*, Puerto Rico, Facultad de Derecho UIPR, 1997, T. IV, V. II, págs. 231-232.

Para que la donación produzca efectos, se requiere la aceptación del donatario y que el donante conozca tal hecho. *Íd.*, pág. 223; Art. 565 del Código Civil de 1930, *supra,* sec. 1988; Art. 1310 del Código Civil de 2020, *supra,* sec. 10054. Asimismo, si recae sobre un inmueble, debe constar en escritura pública, en la que se describa el bien donado, su valor y las cargas, si las hubiera. Art. 575 del

Código Civil de 1930, *supra*, sec. 2010; Art. 1313 del Código Civil de 2020, *supra*, sec. 10057; Vélez Torres, *op. cit.*, pág. 247.

En cuanto a la reversión, el Artículo 583 del Código Civil de 1930, *supra*, sec. 2028, disponía que podía establecerse en favor del donante para cualquier caso u circunstancia. Esta no suspendía la efectividad de la donación, sino que sujetaba el bien a una condición resolutoria que, de cumplirse, hacía cesar los efectos de la donación. Vélez Torres, *op. cit.*, pág. 254. Mientras subsistiera la posibilidad de su cumplimiento, el donatario no adquiría un título de dominio libre de tal limitación. *Íd.* El Artículo 1319 del Código Civil de 2020, *supra*, sec. 10063, conserva esta figura al disponer que el donante y el donatario pueden convenir la reversión del bien al donante. M. R. Garay Aubán, *Código Civil 2020 y su Historial Legislativo*, 2da. ed., Puerto Rico, Ediciones SITUM, 2021, T. 4, pág. 375.

### E. Derechos transitorios

La Ley Núm. 55-2020, conocida como el Código Civil de 2020, *supra*, vigente desde el 28 de noviembre de 2020, derogó el Código Civil de 1930, *supra*. Los actos y contratos celebrados válidamente bajo la legislación anterior surten todos sus efectos conforme a esta. Art. 1812 del Código Civil de 2020, *supra*, sec. 11717. Asimismo, el Artículo 1808 del Código Civil de 2020, *supra*, sec. 11713, dispone:

> Las acciones y los derechos nacidos y no ejercitados antes de la entrada en vigor de este Código, subsisten con la extensión y en los términos que le reconoce la legislación precedente; pero sujetándose, en cuanto a su ejercicio y procedimientos para hacerlos valer, a lo dispuesto en este Código. Si el ejercicio del derecho o de la acción se halla pendiente de procedimientos comenzados bajo la legislación anterior, y estos son diferentes de los establecidos en este Código, pueden optar los interesados por unos o por otros.

A su vez, el Artículo 1813, *supra*, sec. 11718, establece que sus disposiciones no aplican a los contratos en curso de ejecución al momento de entrar en vigor.

**III.**

En el recurso de epígrafe, el señor Montalvo Pérez sostuvo que el TPI erró al calificar como pura, gratuita e incondicionada la donación; al aplicar el Código Civil de 1930, *supra*, a una escritura pública que no se había otorgado; y al continuar los procedimientos pese a que no se le notificó la moción que motivó la vista.

En cuanto al primer señalamiento, es preciso distinguir la donación del inmueble de la obligación asumida por los excónyuges mediante las estipulaciones de divorcio. La *Sentencia* de divorcio no perfeccionó la donación ni transmitió el dominio del inmueble a las hijas de las partes, ya que no se había otorgado la escritura pública requerida para su validez. No obstante, ello no restó eficacia a la obligación contraída por sus progenitores.

Una vez el TPI aceptó las estipulaciones expuestas en la petición de divorcio y las incorporó a la *Sentencia* que advino final y firme, estas constituyeron una transacción judicial vinculante con efecto de cosa juzgada respecto de los asuntos comprendidos. Entre estos figuraba la obligación de donar el inmueble sito en Yauco a sus hijas. De este modo, la recurrida no pretendió ejercer un derecho real correspondiente a las donatarias, sino obtener el cumplimiento de una obligación reconocida en la *Sentencia* de divorcio.

Además, el foro primario desestimó previamente la impugnación de la estipulación relativa a la donación y este Tribunal confirmó el dictamen, al reconocer el carácter vinculante y el efecto de cosa juzgada de lo convenido. Por consiguiente, la validez de la obligación asumida por los excónyuges no podía controvertirse nuevamente durante la etapa de ejecución de la *Sentencia*.

El peticionario adujo que la donación no podía calificarse como gratuita porque formaba parte de una transacción onerosa. No le asiste la razón. Las concesiones recíprocas propias de la transacción se produjeron entre los excónyuges. En cambio, las donatarias no

quedaron obligadas a satisfacer prestación o gravamen alguno por el inmueble. En consecuencia, dichas concesiones no alteraron la naturaleza gratuita de la donación convenida.

Tampoco procede considerar el término de diez (10) días como una condición resolutoria. La referencia al momento en que la *Sentencia* adviniera final y firme únicamente fijó el plazo para otorgar la escritura pública, sin disponer que su vencimiento extinguiría la obligación. Además, el señor Montalvo Pérez se obligó a comparecer como otorgante del instrumento público. Por ello, no puede invocar la falta de cumplimiento oportuno de una obligación que también recaía sobre él para sostener que quedó extinguida. Una vez transcurrió dicho término sin que se otorgara la escritura, se configuró el incumplimiento de una obligación reconocida mediante un dictamen que advino final y firme, no su caducidad. Ante ello, la señora Rivera Pérez podía exigir su cumplimiento mediante la ejecución de la *Sentencia* en la misma acción de divorcio.

La ausencia de una renuncia expresa a la reversión tampoco facultó al peticionario para incorporarla posteriormente. Esta figura no opera automáticamente ni constituye un elemento esencial de la donación. El Artículo 583 del Código Civil de 1930, *supra*, sec. 2028, permitía establecer la reversión en favor del donante, mientras que el Artículo 1319 del Código Civil de 2020, *supra*, sec. 10063, dispone que el donante y el donatario pueden convenirla. Bajo ambos cuerpos legales, la reversión debía estipularse para que surtiera efecto.

En el presente caso, las estipulaciones incorporadas a la *Sentencia* no incluyeron cláusula de reversión ni condición alguna. Incorporarla a la escritura pública sujetaría la titularidad de las donatarias a una condición resolutoria ajena a la atribución patrimonial acordada y alteraría lo convenido. Ello sería incompatible con la interpretación restrictiva del contrato de transacción.

Por consiguiente, aunque la *Sentencia* de divorcio no perfeccionó la donación, hizo exigible la obligación de formalizarla según lo acordado. El señor Montalvo Pérez no podía alterar posteriormente los términos de la donación mediante condiciones adicionales. El primer señalamiento no se cometió.

El segundo planteamiento de error requiere distinguir la obligación contraída en 2018 del acto posterior para formalizar la donación. La obligación surgió de una transacción judicial celebrada bajo la vigencia del Código Civil de 1930, *supra.* Conforme al Artículo 1812 del Código Civil de 2020, *supra,* sec. 11717, los contratos válidos bajo la legislación anterior surten efectos según esta, con las limitaciones establecidas en el nuevo Código. Además, el Artículo 1813, *supra,* sec. 11718, dispone que este no aplica a los contratos en curso de ejecución al entrar en vigor. El Artículo 1808, *supra,* sec. 11713, preserva la extensión y los términos reconocidos por la legislación anterior a los derechos nacidos antes de la vigencia del nuevo Código, aunque su ejercicio se sujete a las disposiciones procesales de este. Por tanto, la ejecución posterior de la *Sentencia* no alteró el contenido sustantivo de la obligación pactada ni convirtió el otorgamiento de la escritura en un negocio jurídico distinto. Aun si el Código Civil de 2020, *supra,* rigiera el otorgamiento, no autorizaría incorporar una cláusula de reversión que las partes no pactaron.

En efecto, el Artículo 1319 del Código Civil de 2020, *supra,* permite que el donante y el donatario convengan la reversión, pero no la establece como requisito de validez. Por tanto, la aplicación de ese cuerpo legal tampoco conduciría al resultado propuesto por el peticionario. Por ello, el TPI no cometió el segundo error.

En cuanto al tercer señalamiento, la transcripción que el peticionario incluyó en el apéndice del recurso no fue presentada conforme al procedimiento establecido en la Regla 76 del Reglamento del Tribunal de Apelaciones, *supra.* En consecuencia, no puede

considerarse una reproducción de la prueba oral que permita corroborar las expresiones atribuidas a la juzgadora durante la vista.

Sin embargo, del expediente surgió que el señor Montalvo Pérez compareció asistido por su representante legal y expuso su posición sobre la cláusula de reversión. Tampoco identificó prueba que se le impidiera presentar ni algún argumento que el TPI se negara a considerar como consecuencia de la falta de notificación. En esas circunstancias, no demostró que la omisión menoscabara su oportunidad de ser oído o incidiera sobre su debido proceso de ley. Por ello, el tercer señalamiento de error no se cometió.

En definitiva, la *Sentencia* de divorcio hizo vinculante y exigible la obligación de formalizar la donación conforme a lo pactado, sin condiciones ni limitaciones adicionales, como la cláusula de reversión propuesta. El vencimiento del plazo no extinguió esa obligación, sino que configuró su incumplimiento y facultó a la recurrida para exigirla mediante la ejecución de sentencia. El peticionario tampoco demostró que se vulneró su debido proceso de ley. En ausencia de error por parte del TPI, procede expedir el auto de *certiorari* y confirmar la *Resolución* recurrida.

**IV.**

Por los fundamentos expuestos, se expide el auto de *certiorari* y se confirma la *Resolución* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones